**CLAYCRAFT CO. v. UNITED MINE WORKERS OF AMERICA.**

No. 11686.

United States Court of Appeals
Sixth Circuit.

May 22, 1953.

Lyman A. Brownfield, Columbus, Ohio (Brownfield, Ford & Douglas, Columbus, Ohio, on the brief), for appellant.

Aubrey A. Wendt, Columbus, Ohio (Jenkins, Williams, Wendt, Murray & Deeg, Columbus, Ohio, on the brief), for appellee.

Before ALLEN, McALLISTER, and MILLER, Circuit Judges.

McALLISTER, Circuit Judge.

This is an appeal from an order of the district court quashing service of summons upon appellee, United Mine Workers of America.

The Claycraft Company brought suit against the union under the provisions of the Labor Management Relations Act of 1947. Service of summons was made upon Daniel Sandy, director of Region 34 of District 50 of the United Mine Workers of America, hereinafter called the International. Appellee thereafter filed a motion to quash on the ground that Sandy was un-

authorized, either by appointment, law, or rule, to accept service of process for the union.

The proofs were taken by way of deposition and are set forth in an affidavit of appellant's counsel and an affidavit by Sandy. The facts themselves are not in dispute, although the legal conclusions, which are set forth in the affidavits as facts, are in conflict. Upon these proofs, the district court entered an order quashing service of the summons.

Sandy is the regional director of Region 34 of District 50 of the International. Title 29 U.S.C.A. § 185(d), provides: "The service of summons, subpena, or other legal process of any court of the United States upon an officer or agent of a labor organization, in his capacity as such, shall constitute service upon the labor organization."

The sole issue presented, then, is whether Sandy was an agent of the International for service of process. That, in turn, depends upon whether District 50 and the International are separate autonomous entities, or whether District 50 is merely a part of the International and an agency through which it carries on its work. The actual relationship, therefore, between District 50 and the International must be determined. See Isbrandtsen Co., Inc., v. National Marine Engineers' Beneficial Ass'n, D.C.N.Y., 9 F.R.D. 541.

District 50 has no constitution. Its existence depends upon a provision of Article XX of the constitution of the International which provides:

"District 50, United Mine Workers of America, subject to the jurisdiction and regulation of the International Executive Board, is hereby created and set up under authority of the International Union and may adopt by-laws and rules not inconsistent with this Constitution."

Under the above provision, District 50 has a book of rules which carries on its flyleaf the names of the officers of the International union, and which provides, in Article I:

"This organization shall be known as District 50, United Mine Workers of America and shall work under and be subject to the Constitution of the International Union, as provided in Article XX thereof."

Under Article XX of the constitution of the International, an Administrative Officer is appointed.

In the rules of District 50, it is provided:

"Article III

"Officers.

"Sec. 1. The Administrative Officer, operating under the authority of Article XX, of the Constitution of the International Union, shall have general and complete supervision over, and administration of the affairs of the District.

"Sec. 2. The Secretary-Treasurer, under the direction of the Administrative Officer, * * * shall receive, and receipt for, all moneys received by the District, pay all bills and current expenses, unless otherwise directed by the Administrative Officer of the District, or the International Executive Board, * * *

"The Secretary-Treasurer and all aides and assistants who handle funds of the District, shall give bond for the faithful performance of their respective duties in such sums as may be fixed by the International Executive Board.

*    *    *    *    *    *

"Sec. 4. The Administrative Officer, the Secretary-Treasurer, their aides and assistants, shall in all respects, be subject to, and conform with, the Constitution and policies of the International Union."

Article V of the rules of District 50 provides:

"Section 1. The Administrative Officer of the District shall be authorized to appoint Regional Directors, who shall have supervision of Local Unions within the region assigned to each, and shall report directly to the Administrative Officer on all matters of policy and organizational activities. Regional Directors shall be charged with the

duty to supervise organizing activities within the region, assist, on behalf of the Local Unions, in the negotiations of wage agreements; seek opportunity for wider employment of the membership and, in general, to advance the economic and social welfare of the membership, and shall make a full and complete written report to the Administrative Officer of the District at the end of each calendar week, setting out all activities in connection with his official duties during that week. * * * Regional Directorships may be established or abolished at the discretion of the Administrative Officer of the District."

From the foregoing, the main consideration that stands out above everything else is the fact that the Administrative Officer operates District 50 for the International. District 50 has no charter. The Administrative Officer is appointed and operates directly under the constitution of the International. He has *complete* supervision over, and administration of the affairs of District 50. The secretary-treasurer of District 50 can carry out his duties only in accordance with the directions of the Administrative Officer.

The regional directors of District 50 are appointed by the Administrative Officer and must make weekly written reports directly to such Officer on all matters of policy and organizational activities. They must, in such reports, also set out all of their activities in connection with their duties during that week. Moreover, the office of regional director may be abolished at any time at the discretion of the Administrative Officer.

The regional director has supervision of local unions within the region; he is charged with the duty of supervising organizational activities, and assisting, on behalf of local unions, in the negotiation of wage agreements, as well as seeking opportunity for wider employment of the membership, and advancing its economic and social welfare. All local unions must be chartered by the International union. Thus, although every local union must have a charter from the International, District 50, through

which these important organizational activities are carried on, has no charter.

On a consideration of the above provisions of the constitution of the International and the rules of the District, we are of the opinion that District 50 and the International are not separate, autonomous entities, but that District 50 is a part of the International and the agency through which it carries out certain of its work.

In Isbrandtsen Co., Inc. v. National Marine Engineers' Beneficial Ass'n supra, in holding that a local union was an autonomous entity separate from the National Union, the court mentioned as one of the considerations bearing upon the issue the fact that the local union existed by reason of a charter granted it by the National, which is contrary to the situation in this case. It was also pointed out that under the constitution of the National Union in the Isbrandtsen case, if the charter of a local union was revoked for any reason other than indebtedness to the National, the money, property, and other assets were to be retained by the local union for the benefit of its members. In the instant case, it is provided by the rules of District 50: "Should the Local Union for any cause attempt to dissolve, disband, or surrender its charter or should its charter be revoked, the charter and all moneys, supplies and property, including real estate shall be taken over by the International Union." The considerations that served to emphasize the autonomous nature of the National Union in the Isbrandtsen case, here serve to emphasize the fact that District 50 is not an autonomous entity separate from the International.

In the instant case, the Administrative Officer was an agent of the International to whom was confided large authority. Under such authority, he appointed Sandy as regional director of District 50. As such director, Sandy was a representative of the International, engaged in carrying out much of its important work.

In Christian v. International Ass'n of Machinists, D.C.Ky., 7 F.2d 481, the court had occasion to determine whether service of process on a chairman of a local union, who was a member of an International, was

service upon the International. It was held that it was not a valid service, the court saying that an International could not be brought before the court, save by service of process on a direct representative whose relation thereto is such that it is reasonable to infer that the service of such process on him will be brought home to the union which he represents. In the instant case, Sandy, as a regional director of District 50, engaged to do the work of the International, and appointed by the Administrative Officer who held office by virtue of the constitution of the International, was a representative of the latter organization. Because of his duty to make full and complete written reports directly to the Administrative Officer setting out all of his activities in connection with his official duties during that week, it would be reasonable to infer, in the language of the Christian case, that the service of process on him, as an agent of the International, would be brought home to that group. Sandy was, in our view, under the statute heretofore mentioned, an agent of the International upon whom process could be served.

In accordance with the foregoing, the order of the district court quashing service of process is reversed and the case is remanded for further proceedings consonant with this opinion.