MORGAN DRIVE AWAY, Inc., an Indiana Corporation, Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, A Labor Organization, and as a representative of all other defendants, et al., Defendants.

No. IP 57–C–285.

United States District Court
S. D. Indiana,
Indianapolis Division.

Sept. 29, 1958.

Order Filed Oct. 28, 1958.

Thompson, O'Neal & Smith, Indianapolis, Ind., Russell J. Ryan, Jr., and Robert D. Morgan, Indianapolis, Ind., of counsel, for plaintiff.

Padway, Goldberg & Previant, Milwaukee, Wis., David Leo Uelman, Milwaukee,

Wis., Gregg Fillion, Fillenwarth & Hughes, Indianapolis, Ind., Edward J. Fillenwarth, Indianapolis, Ind., of counsel, for defendants.

**I.** Complaint

Plaintiff complains of the defendants, and each of them, and for cause of action, alleges and says:

First Paragraph

1. Plaintiff is a corporation organized under and existing by virtue of the laws of the State of Indiana, and is duly qualified to transact business in Indiana and other States. Plaintiff is a motor vehicle common carrier engaged in interstate commerce and in a business affecting interstate commerce and operating under the authority of the Interstate Commerce Commission.

2. Defendant, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, is a labor organization composed of all other defendants and other so-called local unions, conferences and councils and represents and acts for, and controls the activity and conduct of, its members and all other defendants, and is hereinafter called "International Union".

3. Defendant, Central States Conference of International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, is a part of the organization of the International Union and represents and acts for its members and all other defendants, and is hereinafter called "Central States Conference".

4. Defendant, Joint Council No. 43 of International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, is a part of the organization of the International Union and represents and acts for its members and all other defendants and is hereinafter called "Joint Council No. 43".

5. Defendant, Central States Drivers Council of International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, is a part of the organization of the International Union and represents and acts for its members and all other defendants and is hereinafter called "Central States Council".

6. Defendant, Indiana Conference of International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, is a part of the organization of the International Union and represents and acts for its members and all other defendants and is hereinafter called "Indiana Conference".

7. Defendant, Joint Council No. 69 of International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers

**HOLDER, District Judge.**

Plaintiff commenced its action on December 2, 1957, against the defendants. The complaint is in two paragraphs.[1]

of America, is a part of the organization of the International Union and represents and acts for its members and all other defendants and is hereinafter called "Joint Council No. 69".

8. Defendant, Indiana Drivers Council of International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, is a part of the organization of the International Union and represents and acts for its members and all other defendants and is hereinafter called "Indiana Council".

9. Defendant, Gene San Soucie, is a member and President of said Indiana Conference and is a member and Chairman of said Joint Council No. 69 and said Indiana Council and a representative of all other defendants.

10. Defendant, Local Union No. 364, of South Bend, Indiana, of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, is a part of the organization of the International Union and represents and acts for its members and all other defendants and is hereinafter called "Local Union No. 364".

11. Defendant, Local Union No. 691 of Richmond, Indiana, of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, is a part of the organization of the International Union and represents and acts for its members and all other defendants and is hereinafter called "Local Union No. 691".

12. Defendant, Alfred W. Cors, is President of said Local Union No. 691 and represents and acts for its members and all other defendants.

13. Defendant, William H. Jones, is Secretary-Treasurer of said Local Union No. 691 and represents and acts for its members and all other defendants.

14. All defendants by their officers and/or agents are engaged in representing or acting for employee members in industries affecting commerce in the district of the United States District Court for the Southern District of Indiana.

15. This action arises under the Act of June 23, 1947, and particularly Section 303 thereof, the same being 61 Stat. 158 and Title 29 U.S.C.A. Section 187.

16. In the course of plaintiff's business plaintiff has transported goods, articles, materials, and commodities from the premises and plant of Richmond Homes, Inc., in Richmond, Indiana, which is en-

The defendants, San Soucie, Cors and Jones, filed a joint motion to dismiss as to paragraph one of the complaint and another motion to dismiss as to paragraph two of the complaint.[2]

gaged in business affecting interstate commerce to-wit, the manufacture and sale of prefabricated houses which are shipped by common carrier transport to locations in other states.

17. Said defendants, and each of them, have induced and encouraged, and participated in the inducement and encouragement of, the employees of said Richmond Homes, Inc. and the employees of other employers to engage in a concerted refusal, in the course of their employment, to use, manufacture, place, transport, and otherwise handle and work on goods, articles, materials, and commodities, and to perform services, for the unlawful objects of forcing and requiring self-employed persons to join Local Union No. 691 and of forcing and requiring said Richmond Homes, Inc., to cease doing business with plaintiff in that said defendants, among other things, have participated in and instituted, induced, inspired, aided, assisted, and abetted each other in:

(a) picketing the premises of said Richmond Homes, Inc. and preventing plaintiff from engaging in its legitimate business at and on said premises;

(b) forcing and inducing said Richmond Homes, Inc., to cease doing business with plaintiff;

(c) destroying plaintiff's business with Richmond Homes, Inc.,

all to plaintiff's damage and injury as hereinafter alleged.

18. By reason of said defendants' unlawful acts plaintiff has suffered damages in the total amount of $340,000.

Wherefore, plaintiff demands damages in the sum of $340,000 and its costs.

Second Paragraph

1. Plaintiff realleges in this Second Paragraph of Complaint the matters alleged in rhetorical paragraphs 1 to 14, both inclusive, of the First Paragraph of this Complaint, as fully, with the same effect and to the same extent as if set out at length herein.

2. This action arises under the Act of June 23, 1947, and particularly Section 301 thereof, the same being 61 Stat. 156 and Title 29 U.S.C.A. Section 185.

3. In the course of plaintiff's business plaintiff has transported goods, articles, materials and commodities from the premises and plant of Richmond Homes, Inc. in Richmond, Indiana, which is engaged in business affecting interstate commerce, to-wit: the manufacture and sale of prefabricated houses which are shipped by common carrier transport to locations in other states.

4. On or about December 6, 1951, plaintiff and defendants, Local Union No. 364 and Joint Council No. 43, acting for themselves and all other defendants, entered into certain agreements in writing with plaintiff, true and exact copies of which are hereto annexed and incorporated herein by reference as Exhibits A and A-1.

5. Defendants have failed to perform said agreements and have breached the same, and have interfered with the performance of the same, in that on or about June 10, 1957, and at various times thereafter, said defendants induced and encouraged, and participated in the inducement and encouragement of, the employees of Richmond Homes, Inc. and the employees of other employers to engage in a concerted refusal, in the course of their employment, to use, manufacture, place, transport, or otherwise handle and work on goods, articles, materials, and commodities, and to perform services, for the object of forcing and requiring said Richmond Homes, Inc. to cease doing business with the plaintiff in that defendants, among other things, have participated in and instituted, induced, inspired, aided, assisted and abetted each other in:

(a) picketing the premises of said Richmond Homes, Inc.;

(b) preventing plaintiff from engaging in its legitimate business on said premises of Richmond Homes, Inc.;

(c) forcing and inducing said Richmond Homes, Inc. to cease doing business with plaintiff;

(d) destroying plaintiff's business with Richmond Homes, Inc. all to plaintiff's damage and injury as hereinafter alleged.

6. By reason of said defendants' acts plaintiff has suffered damages in the total amount of $340,000.

Wherefore, plaintiff demands damages in the sum of $340,000 and its costs.

2. Motion to Dismiss
by
Gene San Soucie, Alfred W. Cors
and William H. Jones
as
Individual Defendants
with respect to the
Second Paragraph of Complaint

Gene San Soucie, Alfred W. Cors and William H. Jones, as individual defendants in the above entitled cause, move

Paragraph one of the complaint is based on Section 303 of the Labor-Management Relations Act of 1947, Title III, 61 Stat. 158, 29 U.S.C.A. Section 187, which reads in part as follows:

"(a) It shall be unlawful, for the purposes of this section only, * * *, for any labor organization to engage in * * *

"(b) Whoever shall be injured in his business or property by reason of any violation of subsection (a) of this section may sue * * * subject to the limitations and provisions of section 185 of this title * * *, and shall recover the damages by him sustained * * *."

Paragraph two of the complaint is based on Section 301 of said Act, 29 U.S.C.A. Section 185, which reads in part as follows:

"(a) Suits for violation of contracts between an employer and a labor organization * * *, may be brought in any district court of the United States, * * *. (b) Any labor organization which represents employees in an industry * * * shall be bound by the acts of its agents. * * *."

The complaint does not charge these three defendants with being a labor organization within the meaning of the quoted sections of the statute.

Neither of the sections of the statutes creating the right of action and establishing the jurisdiction in this Court gives the plaintiff any right of action against, or this Court jurisdiction over San Soucie, as a member and/or representative of all other defendants and/or individually; or Cors, individually and as a member and/or representative of all other defendants; or Jones, individually and as a member and/or representative of all other defendants. Cases to this effect: Square D. Co. v. United Electrical Radio & Machine Workers of America, D.C. E.D.Mich.1954, 123 F.Supp. 776; Disanti v. Local 53, D.C.W.D.Pa.1954, 126 F. Supp. 747; Copra v. Suro, 1 Cir., 1956, 236 F.2d 107; Ketcher v. Sheet Metal Workers' International Ass'n, D.C.E.D. Ark.1953, 115 F.Supp. 802; United Automobile Workers Amalgamated Local No. 286 v. Wilson Athletic Goods Mfg. Co., Inc., D.C.N.D.Ill.1950, 119 F.Supp. 948; Evening Star Newspaper Co. v. Columbia Typographical Union No. 101, D.C. 1954, 124 F.Supp. 322; and United Protective Workers of America v. Ford Motor Co., 7 Cir., 1952, 194 F.2d 997.

The plaintiff would have the Court construe the language of Section 301(b) and (e) of said Act, 29 U.S.C.A. Section 185, to authorize an action against an individual even though any judgment against.

the Court to dismiss the action against them as alleged in the Second Paragraph of the Complaint, since: (a) The Second Paragraph of Complaint fails to state a claim upon which relief can be granted against the said individual defendants, as said Second Paragraph of Complaint is predicated upon Section 301 of the Labor-Management Relations Act of 1947, Title III, 61 Stat. 156, 29 U.S.C.A. Sec. 185, and said Section 301 does not authorize or permit a damage suit to be filed against an individual; and (b) The Court is without jurisdiction under said Second Paragraph of Complaint, in so far as said individual defendants are concerned, as said Second Paragraph of Complaint is predicated upon Section 301 of the Labor-Management Relations Act of 1947, Title III, 61 Stat. 156, 29 U.S.C.A. Sec. 185, and said Section 301 does not authorize or

permit a damage suit to be filed against an individual.

Motion to Dismiss
by
Gene San Soucie, Alfred W. Cors
and William H. Jones
as
Individual Defendants
with respect to the
First Paragraph of Complaint

Gene San Soucie, Alfred W. Cors and William H. Jones, as individual defendants in the above entitled cause, move the Court to dismiss the action against them as alleged in the First Paragraph of the Complaint, since: (a) The First Paragraph of Complaint fails to state a claim upon which relief can be granted against the said individual defendants, as said First Paragraph of Complaint is predicated upon Section 303 of the La-

the individual may not be enforced against his personal assets. Such an interpretation is contrary to the clear expression of congressional intent that any judgment against a labor organization cannot be satisfied from the personal assets of its members as distinguished from the assets of the organization.

The plaintiff has its remedy by the statute against the labor organization for the forbidden acts of it and its agents.

The motions of San Soucie, Cors and Jones to dismiss paragraphs one and two of the complaint are hereby sustained.

The Central Conference of Teamsters and Central Drivers Council filed an additional joint defense to the second paragraph of the complaint in the nature of a motion to dismiss.[3] The remaining defendants, except Joint Council No. 43, filed a joint second defense to the second paragraph of the complaint in the nature of a motion to dismiss.[4] These motions were supported by the following stipulation and no other evidence was offered by either party:

"That the unfair labor practice charge in Case No. 7–CC–18, before the National Labor Relations Board, Seventh Region, in the matter of General Drivers, Warehousemen, Helpers and Gas Station Attendants, Local No. 614, and others, and Morgan Drive Away, Inc., was withdrawn in due course as provided by the agreement which is attached as Exhibit A and A–1 to plaintiff's complaint."

The second paragraph of the complaint does not seek recovery of damages for a wrong committed prior to the settlement contract of 1951.[5] It is on the the-

---

bor-Management Relations Act of 1947, Title III, 61 Stat. 158, 29 U.S.C.A. Sec. 187, and said Section 303 does not authorize or permit a damage suit to be filed against an individual; and (b) The Court is without jurisdiction under said First Paragraph of Complaint, in so far as said individual defendants are concerned, as said First Paragraph of Complaint is predicated upon Section 303 of the Labor-Management Relations Act of 1947, Title III, 61 Stat. 158, 29 U.S.C.A. Sec. 187, and said Section 303 does not authorize or permit a damage suit to be filed against an individual.

3.                     Answer
of
Central Conference of Teamsters
of the
International Brotherhood of Teamsters,
Chauffeurs, Warehousemen and
Helpers of America
and of
Central Drivers Council
of the
International Brotherhood of Teamsters,
Chauffeurs, Warehousemen and
Helpers of America
Additional Defense
The First Legal Paragraph and/or Count of plaintiff's Complaint fails to state a claim against the said defendants upon which relief can be granted.
Additional Defense
The Second Legal Paragraph and/or Count of plaintiff's Complaint fails to state a claim against the said defendants upon which relief can be granted.

4.                 Second Defense
The Second Legal Paragraph and/or Count of the plaintiff's Complaint fails to state a claim against the said defendants upon which relief can be granted.

5.                 Settlement Agreement
The undersigned labor organizations (herein called the unions) and Morgan Drive Away, Inc. (herein called the charging party) in settlement of the above-entitled proceeding, subject to the approval of the Regional Director of the Seventh Region of the National Labor Relations Board (herein called the Regional Director) Hereby Agree as Follows:
1. The unions and each of them—
(a) Will not engage in, or induce or encourage the employees of Pontiac Coach Company, Drayton Plains, Michigan; Mobile Trailer Company, Marysville, Michigan; Schult Corporation, Elkhart, Indiana, or the employees of any transportation company serving any of the foregoing, or the employees of any other employer, to engage in a strike or a concerted refusal, in the course of their employment, to transport or otherwise handle or work on goods, articles, materials or commodities, or to perform services, where an object is to force or require their respective employers or any other person to cease using the

ory that the provisions of paragraph one of the contract were breached by the alleged wrongs of defendants and resulting damage to plaintiff some six years later in Richmond, Indiana.

It is unnecessary to pursue the many questions involved, such as, whether the same defendants were involved in the contract as were involved in the Richmond matter.

■ The contract must be interpreted to ascertain the intention of the parties as to whether the 1951 contract was in effect at the time of the alleged wrongs and damage in the year 1957 in Richmond, Indiana. I conclude that the contract was terminated and the obligations and duties of the parties thereto were fully discharged upon the dismissal of the charges before the National Labor Relations Board.

The contract did not contemplate the labor organizations performing paragraph one in futuro and in perpetuity after consummation of the issue of the proceeding before the Board. The intention of the contract is further clearly stated in paragraph two in the following:

services of or cease doing business with the charging party.

(b) Will each sign and post immediately in conspicuous places in their respective business offices the appropriate notice of the series of notices hereto attached and made part hereof marked Exhibits A to C inclusive; which is signed by their respective representatives and will maintain said notices for sixty consecutive days from the date of posting thereof and will not permit said notices to be altered, defaced or covered by any other material, and will fully comply with the terms of said notice.

(c) Will notify the Regional Director in writing within five days from the date of the approval of this agreement that the signed notices provided for herein have been posted, and will again notify the Regional Director sixty days thereafter that the said signed notices have remained posted as provided herein and that this agreement has been fully observed as to each and every term thereof.

2. The charging party agrees that no further proceedings shall be taken herein, except for action by the unions pursuant

" * * * when the Regional Director is satisfied that the *terms of this agreement have been carried out by the unions,* requests leave to withdraw the charge herein." (Italics added.)

The stipulation confirms that the Regional Director was satisfied that the defendants carried out the terms of the contract.

■ The contract, having been performed by both parties thereto is terminated and cannot be the basis of the action set forth in paragraph two of the complaint. Vol. II Restatement of the Law of Contracts, Section 386. Also see following cases discussing elements of discharge and holding against contracts in perpetuity: Town of Readsboro v. Hoosac Tunnel & W. R. Co., 2 Cir., 6 F. 2d 733; Holt v. St. Louis Union Trust Co., 4 Cir., 52 F.2d 1068; Miller v. Miller, 10 Cir., 134 F.2d 583; Freeport Sulphur Co. v. Aetna Life Ins. Co., 5 Cir., 206 F.2d 5, 41 A.L.R. 2d 762; J. C. Millett Co. v. Park & Tilford Distillers Corp., D.C.Cal., 123 F.Supp. 484.

The same defendants also filed other motions to dismiss or strike paragraph

to this agreement, so long as the unions are complying herewith and, effective when the Regional Director is satisfied that the terms of this agreement have been carried out by the unions, requests leave to withdraw the charge herein.

3. It is understood and agreed by the parties that the Regional Director will mail copies of the notices provided for herein to Pontiac Coach Company, Mobile Trailer Company, Schult Corporation, Earl C. Smith, Inc. and will make copies available upon request to any transportation or other company servicing Morgan Drive Away, Inc. or any of the foregoing who have had knowledge of the matters alleged in the charge herein.

4. The signing of this settlement stipulation by the unions is not to be construed as an admission on the part of the unions that they have violated any of the provisions of the National Labor Relations Act or that they have engaged in the acts or course of conduct alleged in the charge, and does not constitute a waiver of any of the defenses the unions may have asserted to the charge.

two of the complaint for other reasons. They have been overruled for the reason that the second paragraph has already been dismissed and the questions raised by these motions are moot. The Court did not determine these motions to dismiss or strike upon the grounds asserted.

Joint Council No. 43, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, one of the defendants, moved the Court to dismiss the action as to it.[6] The motion was supported by an affidavit and further evidence was heard.

The International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America filed motions to dismiss the action entitled third and fourth defenses.[7] A motion of the International Union for a preliminary hearing of its third and fourth defenses was granted and evidence was heard.

Plaintiff's second paragraph of the complaint having been dismissed, referred to in this opinion, the question raised by the motion of Joint Council

No. 43 and the International Union are moot as to it.

Plaintiff's first paragraph of the complaint seeks to identify all of the defendants liable for the alleged wrong asserted to have been committed in the Richmond, Indiana, area of the defendant, Local Union No. 691 of Richmond, Indiana. Whether this liability exists is a fact question for the requested jury. These motions preliminarily raise the question, aside from the question of liability, as to whether Joint Council No. 43 and the International Union are properly brought into this Court by process to stand trial to a jury on the issues. Does the Court and jury have jurisdiction of their persons? This is a legal question to be decided by the Court.

Joint Council No. 43 and the International Union were hailed into Court upon process of twelve summons. The returns of the United States Marshal disclose that each summons for each of the twelve defendants for each of them individually, "and as a representative of all other defendants", was served upon one or more of the following as repre-

6.            Motion to Dismiss
Joint Council No. 43, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, one of the defendants above named, moves the Court to dismiss the action for the following reasons:
1. That this Court has no jurisdiction over the person of the defendant, Joint Council No. 43, because no process of this Court was ever served upon an officer or agent of Joint Council No. 43 and said defendant has in no way or manner voluntarily submitted itself to the jurisdiction of this Court.
2. That this Court has no jurisdiction over the subject matter of this action because the matters in controversy do not arise under the Constitution and Laws of the United States.
In support of this Motion, the Affidavit of Norman C. Murrin is attached hereto and made a part hereof
Dated this 26th day of August, 1958.

7.            Third Defense
The Court has no jurisdiction over the defendant, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, as no process

or summons was served upon any officer or agent or representative of said defendant, and the defendant has in no way or manner voluntarily submitted itself to the jurisdiction of the Court; the said defendant is a voluntary unincorporated association commonly designated as an international labor union and composed of autonomous local unions located throughout the United States and Canada and the territories of the United States; the place of business and office of the defendant, as well as the offices of the President and Secretary-Treasurer thereof, are located permanently at 25 Louisiana Avenue, N. W., Washington 1, D. C., neither the defendant, nor any of its officers, is domiciled, or located within, or a resident of this judicial district or of the State of Indiana.
           Fourth Defense
The Court has no jurisdiction over the defendant, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, as the defendant has not been properly or sufficiently served with process in this action, as alleged more fully in the Third Defense of the defendant.

sentatives of or agents of the defendant associations and individuals: Alfred W. Cors, Gene San Soucie, Norman C. Murrin, and William H. Jones.

The unquestioned evidence is that the officers, and those agents designated for the receipt of process of the defendants Joint Council No. 43 and the International Union are not those served by the Marshal, none reside in Indiana. The principal offices of the two moving defendants respectively are situated in the State of Michigan, and in the District of Columbia.

The plaintiff contends that the persons served were agents of the International Union and Joint Council No. 43 and it is unnecessary that they be officers or expressly designated agents for process. The plaintiff asserts those served were not autonomous entities and were merely part of the two moving defendants through whom they carry on their work, citing Claycraft Co. v. United Mine Workers of America, 6 Cir., 1953, 204 F. 2d 600.

Subsections (c), (d) and (e) of Section 301 of the Labor Management Relations Act of 1947 (29 U.S.C.A. Section 185) is incorporated by reference into Section 303 of the Act (29 U.S.C.A. Section 187) upon which plaintiff's first paragraph of the complaint is based, and reads as follows:

"(c) For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members.

"(d) The service of summons, subpoena, or other legal process of any court of the United States upon an officer or agent of a labor organization, in his capacity as such, shall

constitute service upon the labor organization.

"(e) For the purposes of this section, in determining whether any person is acting as an 'agent' of another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized, or subsequently ratified shall not be controlling. (June 23, 1947, c. 120, Title III, § 301, 61 Stat. 156; [29 U.S.C.A. Sec. 185])."

Whether the parties served with process were agents of the two moving defendants within the meaning of the above quoted act depends upon the actual relationship as revealed by the evidence submitted to this Court and not upon guess, surmise and suspicion. The facts as found do not warrant the same interpretation as the facts found in the Claycraft case, supra.

Pursuant to Rule 52 of the Rules of Civil Procedure, 28 U.S.C.A., the Court now states its Findings of Fact:

1. Plaintiff is a corporation organized under and existing by virtue of the laws of the State of Indiana and it is a motor common carrier engaged in interstate commerce and in a business affecting interstate commerce operating under the authority of the Interstate Commerce Commission.

2. Defendant, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, is an international labor organization, a voluntary unincorporated association, which has many local unions affiliated with it, and said local unions are located in various parts of the United States, Canada, and the territories of the United States; also affiliated with said International Union are various Joint Councils, which are made up of affiliated local unions in a city, area, or state; also affiliated with said International Union are Conferences, which are organized on a state or larger area basis, and affiliated with said Conferences are various local unions in a

particular state or area composed of several states, or an area in Canada, or the territories of the United States; the principal office and headquarters of said defendant is located at 25 Louisiana Avenue, N. W., Washington, D. C.; said defendant operates and functions under a written document entitled Constitution of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America; said defendant has as its officers, a General President, General Secretary-Treasurer, 13 Vice-Presidents, and 3 Trustees, all of whom have been elected at a Convention composed of delegates from the various local unions affiliated with said defendant.

3. Defendant, Central Conference of Teamsters, is a labor organization, a voluntary unincorporated association; affiliated with it are all teamster local unions in its area; it operates and functions under a written document entitled Constitution of the Central Conference of Teamsters; it has a Charter from the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America; it has as an officer, a Chairman, who is appointed by the General President of the International Brotherhood of Teamsters; it also has as officers, a Vice-Chairman, Secretary-Treasurer, and Recording Secretary, all of whom are elected by the delegates of the various local unions affiliated with said defendant; said officers together with any International Vice-President or Vice-Presidents located in the area, constitute the Executive Board of said defendant.

4. Defendant, Central States Drivers Council, is a labor organization, a voluntary unincorporated association; affiliated with it are Teamster local unions in its area; it has a Charter from the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America; it has officers who are elected by delegates from the various local unions affiliated with said defendant.

5. Defendant, Indiana Conference of Teamsters, is a labor organization, a voluntary unincorpoarted association; affiliated with it are all Teamster local unions in the State of Indiana, except those located in Lake and Porter Counties; it operates and functions under a written document entitled By-Laws of Indiana Conference of Teamsters; it has a Charter from the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America; it has officers who are elected by delegates from the various local unions affiliated with said defendant.

6. Defendant, Joint Council No. 69, is a labor organization, a voluntary unincorporated association; affiliated with it are all Teamster local unions in the State of Indiana, except those located in Lake and Porter Counties; it operates and functions under a written document entitled By-Laws of Joint Council No. 69; it has a Charter from the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America; it has officers who are elected by delegates from the various local unions affiliated with said defendant.

7. Defendant, Teamster Local Union No. 691, is a labor organization, a voluntary unincorporated association; it has its principal office and place of business at Richmond, Indiana, and is composed of individual members in that area; it has a Charter from the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America; it has officers who are elected by the members thereof; it holds regular meetings of its members; it has a bank account from which monies may be drawn by three officers thereof; it engages in collective bargaining and negotiates contracts for and on behalf of its members, submits negotiated contracts to its members for ratification and approval, and enters into contracts with employers for and on behalf of its members; it collects initiation fees and dues from its members, and forwards a per capita tax to Joint Council No. 69, Indiana Conference of Teamsters, Central Conference of Teamsters, and International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

8. Defendant, Teamster Local Union No. 364, is a labor organization, a voluntary unincorporated association; it has its principal office at South Bend, Indiana, and is composed of individual members in that area; it has a Charter from the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America; it has officers who are elected by the members thereof; it holds regular meetings of its members; it has several bank accounts from which monies may be drawn by two officers thereof; it engages in collective bargaining and negotiates contracts for and on behalf of its members, submits negotiated contracts to its members for ratification and approval, and enters into contracts with employers for and on behalf of its members, it collects initiation fees and dues from its members, and forwards a per capita tax to Joint Council No. 69, Indiana Conference of Teamsters, Central Conference of Teamsters, and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

9. Teamster Local Union No. 135 is a labor organization, a voluntary unincorporated association; it has its principal office and place of business at Indianapolis, Indiana, and is composed of individual members in that area; it has a Charter from the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America; it has officers who are elected by the members thereof; it holds regular meetings of its members; it has several bank accounts from which monies may be drawn by two officers thereof; it engages in collective bargaining and negotiates contracts for and on behalf of its members, submits negotiated contracts to its members for ratification and approval, and enters into contracts with employers for and on behalf of its members; it collects initiation fees and dues from its members, and forwards a per capita tax to Joint Council No. 69, Indiana Conference of Teamsters, Central Conference of Teamsters, and International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

10. Defendant, Gene San Soucie, is a member of Teamster Local Union No. 135; he is the duly elected President of Teamster Local Union No. 135, Joint Council No. 69, and Indiana Conference of Teamsters; he is the Recording Secretary of the Central Conference of Teamsters; he was elected by the members of Teamster Local Union No. 135 as a delegate to Joint Council No. 69, Indiana Conference of Teamsters, Central Conference of Teamsters, Central States Drivers Council and the Convention of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, which Convention was held in October of 1957; he resides at 7005 Westfield Boulevard, Indianapolis, Marion County, Indiana.

11. Defendant, Alfred W. Cors, is a member of Teamster Local Union No. 691; he is the duly elected President of said local union, and was elected by the members thereof as a delegate from said local to Joint Council No. 69, Indiana Conference of Teamsters, Central Conference of Teamsters, and Central States Drivers Council; he resides at Lawrenceburg, Indiana.

12. Defendant, William H. Jones, is a member of Teamster Local Union No. 691; he is the duly elected Secretary-Treasurer of said local union, and was elected by the members thereof as a delegate from said local union to Joint Council No. 69, Indiana Conference of Teamsters, Central Conference of Teamsters, Central States Drivers Council, and the Convention of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, which Convention was held in October of 1957; he resides in Richmond, Indiana.

13. Norman C. Murrin is a member of Teamster Local Union No. 364; he is the duly elected President of Teamster Local Union No. 364, and the duly elected Recording Secretary of the Central States Drivers Council; he was elected by the members of Teamster Local Union

No. 364 as a delegate from said local union to Joint Council No. 69, Indiana Conference of Teamsters, Central Conference of Teamsters, Central States Drivers Council and the Convention of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, which Convention was held in October of 1957; he resides at South Bend, Indiana.

14. The returns of the United States Marshal disclose that each summons for each of the twelve defendants was for each individually, "and as a representative of all other defendants", was served upon one or more of the following as representatives of or agents of the defendant associations and individuals: Alfred W. Cors, Gene San Soucie, Norman C. Murrin, and William H. Jones.

15. Defendant, International Union, is governed by a written document commonly known as the "Constitution of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America," the most current revision of which is dated October 5, 1957, was in effect at the time of the issuance of process in question in December 1957.

16. The International Union's Constitutional objects are:

"Section 2. To organize under one banner all workmen engaged in the craft, and to educate them to cooperate in every movement which tends to benefit the organizations;
*   *   *."

It grants broad powers to the general president of the International, including under Article IV, Section 2, the authority to interpret the constitution and laws of International Union and to decide on all questions of laws thereunder. The general president has the authority unless some other procedure is expressly provided in the constitution to settle and determine all grievances and disputes submitted to him by joint councils of local unions and other subordinate bodies, subject to appeal to the general executive board and thereafter to the next convention and further:

"(b) When the general president makes a decision or orders a local union to observe the laws, the local union refuses, the local union shall be subject to suspension or revocation of charter by the general executive board."

17. Each of the defendant associations are chartered by the International. The International Constitution, Article VI, Section 5, provides:

"By-laws of local unions and other subordinate bodies and amendments thereto shall be subject to the approval of the general president."

18. The power of the International by the general president extends to impose trusteeship pursuant to Article VI, Section 6, which provides in part as follows:

"Section 6(a) If the general president has or receives information which leads him to believe that any of the officers of a local union or other subordinate bodies, are dishonest or incompetent, or that such organizations are not being conducted in accordance with the constitution and laws of the International Brotherhood or for the benefit of membership, or are being conducted in such a manner as to jeopardize the interests of the International Brotherhood, he may appoint a temporary trustee to take charge and control of the affairs of such local union or other subordinate bodies; provided, *   *   *".

The power of the trustee is set forth in Article VI, Section 6(b) as follows:

"The trustee shall be authorized and empowered to take full charge of the affairs of the local union or other subordinate body, to remove for the period of his trusteeship any or all officers and appoint temporary officers during his trusteeship, and to take such other action as in his judgment is necessary for the preservation of local union or subordinate body and their interests."

The trustee reports to the general president. His acts are subject to the approval of the general president. The general president may remove the trustee at any time. The suspended officers

"shall turn over all moneys, books and property of the local union and subordinate body to the trustee and must receipt for the same."

19. Article VII, Section 3, of the International Constitution sets out the form of charter contract for a Local which provides as follows:

"Charter Contract

"Know all men by these presents, that I, ——— ———, Secretary-Treasurer of the ——— Local ———, located at ———, being authorized to act for said local, in consideration of the General Secretary-Treasurer issuing a charter to said local, hereby agree: That said charter shall remain the property of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers; and in consideration of the premises herein stated, agree that when charter is framed, the frame shall immediately become the property of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers. Said local union shall have custody of said charter until it is demanded by some person authorized to make such demand, in accordance with this Constitution; and the charter and frame shall then be delivered to the person so authorized to demand and so authorized may enter any premises occupied by the said local or any of its members and take possession and remove the said charter.

"I do further recognize and acknowledge in behalf of local ——— that the name and all rights and privileges hereunder, are granted this local union by the International Union, and that all books, documents, contracts, name, moneys, funds and property of any nature and description which may be obtained, accumulated and maintained by this local union will result, be obtained, accumulated or maintained by the granting of this charter and the rights and privileges

thereunder, therefore, in the event this charter is revoked, upon such revocation, all books, documents, contracts, name, moneys, funds and property shall belong to and shall be delivered over to the International Union by it to be retained, as provided for in Article X, Sections 15 and 16 thereof, until the charter is reinstated or a successor local or locals are chartered.

"I do further agree in behalf of local ——— that it will abide by the provisions of the International Constitution and amendments thereto, all of which are incorporated herein by reference.

"———————————————

By its Secretary-Treasurer"

Article IX of the International Constitution provides for revocation and suspension of charters of any local by the International.

20. Article XII provides for the approval of certain of the activities of the local union by the International and reads in part as follows:

"(c) Prior to a local union becoming involved in a strike, lockout, boycott, lawsuit or any serious difficulty, such local union shall immediately notify the Joint Council of which it is a member of any contemplated action setting forth the action contemplated and nature of the difficulty. The Joint Council shall then take steps to approve or disapprove such contemplated action. The Joint Council shall notify the General President of the steps it has taken in respect to such contemplated action. The General President is authorized to approve, disapprove or modify the action of the Joint Council. Approval, disapproval or modification of the action of the Joint Council or the local union by the General President shall not operate to impose any liability on the International or its officers or to make them parties to any such action. The International does not assume any liability of any nature to any person or persons simply by reason

of such approval, disapproval or modification."

21. Article XIII of the International Constitution regulates certain financial transactions and conditions for receipt of financial assistance to local unions from the International Union and provides:

"Section 1. No local union shall receive financial assistance from the International Brotherhood unless the Secretary-treasurer of said local union has been bonded in accordance with the provisions of this Constitution.

"Section 2. All local unions affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers, soliciting financial aid from sister local unions, must first receive official approval and endorsement from the General Executive Board."

22. By Article XV the International Constitution, the International creates Joint Councils, provides for their jurisdiction and affiliation of locals. Local unions are required to pay monthly dues proportionate to their strength to such joint councils. Section 6 of such Article provides as follows:

"Section 6. All local unions within the jurisdiction of the joint councils shall affiliate with the joint council, comply with its laws and obey its orders."

23. The relationship of the various subordinate organizations within the International is shown by Article XV, Section 7 which provides:

"Section 7. Experience has demonstrated that conferences are beneficial to this International Union and its affiliates and should, therefore, be recognized as organic bodies within this International Union; therefore, conferences shall be organized on such geographical areas or trade divisions as the General Executive Board may direct; that they shall be at all times subject to the supervision and control of the International Union; they shall function under rules and by-laws laid down by the General Executive Board. The International Union Constitution shall supersede conference by-laws in the event of conflict.

"Affiliation with and participation in activities of conferences by local unions shall be necessary when and to the extent ordered by the General Executive Board in its discretion.

"Failure on the part of any local union to obey any order issued by the International Union in respect to such affiliation and participation shall subject such local union to the disciplinary provisions provided for in this Constitution for disobedience of orders of the International Union and of its General Officers."

24. During the year 1957 over one hundred local unions of the defendant International Union were in trusteeship. While this appears to be an alarming number no facts appear of record concerning the cause or purpose of the trusteeship of these locals upon which to establish sheer domination by the International Union or an inference thereof to the extent that the Constitution itself or the application thereof by the International Union destroyed the autonomous status of the locals or any of the other affiliated union defendants.

25. Each defendant including the International is supported by dues of members paid to a local union. Such dues are shared either by allocation of a portion of such dues, a per capita tax or by the issuance for a consideration of an identification card.

26. The relationship of defendant International and the defendant associations financially is shown by defendants' admission reading as follows:

"49. They (defendants) admit that the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, Helpers of America, on one or more occasions, has used the funds of the International to assist various local unions affiliated there-

898

with, and in the process thereof may have 'transferred or cause to be transferred' some of the funds of the International union to assist various local unions affiliated therewith, * * *."

Such use of funds is further shown by the transfer of $125,000 from Local Union 299 of which Mr. James R. Hoffa was and is President, then Vice-President and now President of the International Union to or for the benefit of Local 135 of which Mr. San Soucie is President. Such transfer was made during the year 1954 to the Fidelity Bank & Trust Company of Indianapolis, Indiana. The original authority to withdraw such funds from such deposit was given to Gene San Soucie and Norman C. Murrin and later changed to James R. Hoffa and Frank Collins.

27. The Constitution of the International Brotherhood of Teamsters, prescribes inter alia, the manner in which the business of the International Union shall be transacted, the persons who may transact such business, and the methods of selecting or appointing the persons who may transact such business.

28. The business of the International Brotherhood of Teamsters, according to its Constitution, is transacted by the General President, the General Secretary-Treasurer, thirteen (13) Vice-Presidents, and three (3) Trustees, all of whom are elected officials, and also by International "Organizers", who are appointed by the General President.

29. The Constitution of the International Brotherhood of Teamsters prescribes a number of rules of conduct and procedure applicable to individual members, affiliated local unions, affiliated Joint Councils, and affiliated State and area Conferences, and vests in the International Union in given instances a degree of authority or control over the said individual members, affiliated local unions, affiliated Joint .Councils and Conferences; these provisions of the Constitution evidence the fact that said affiliated local unions, Joint Councils, State and area Conferences, have constitutional authority to govern themselves and to transact business through their own duly elected agents and representatives; nowhere in the Constitution of the International Union is there any authority granted to the official or representative of any affiliated local union, Joint Council, State or area Conference, with the exception of the Chairman of area conferences, to hold himself out to be an official, representative, or agent of the International Union.

30. Gene San Soucie is neither an elective official nor an appointive International Representative or "Organizer" of the International Union, nor has he held himself out to be such official, representative or "Organizer".

31. Alfred W. Cors is neither an elective official nor an appointive International Representative or "Organizer" of the International Union, nor has he held himself out to be such official, representative or "Organizer".

32. William H. Jones is neither an elective official nor an appointive International Representative or "Organizer" of the International Union, nor has he held himself out to be such official, representative or "Organizer".

33. Norman C. Murrin is neither an elective official nor an appointive International Representative or "Organizer" of the International Union, nor has he held himself out to be such official, representative or "Organizer".

Upon the above Findings of Fact, the Conclusions of Law are as follows:

1. The Court has jurisdiction to determine the issue presented by defendants' motions.

2. The law is with the defendants.

3. The plaintiff's action is based on the provisions of Section 303 of the Labor-Management Relations Act of 1947 (29 U.S.C.A. Section 187).

4. The plaintiff and the defendant associations are respectively employer and labor organizations within said act and are subject to the provisions thereof for the purpose of this action.

5. The defendants are autonomous associations affiliated with the International Union and Joint Council No. 43 and in December 1957 when process was served upon them through their officers, were not officers or agents of the International Union or Joint Council No. 43 within the meaning of Section 301(d) of the Labor-Management Relations Act of 1947 (29 U.S.C.A. Section 185(d)).

6. The defendants, Gene San Soucie, Alfred W. Cors, William H. Jones, and Norman C. Murrin, were not, in December 1957 when process was served upon them, officers or agents of the International Union or Joint Council No. 43 within the meaning of Section 301(d) of the Labor-Management Relations Act of 1947 (29 U.S.C.A. Section 185(d)).

7. The Court does not have jurisdiction over the person of the defendants, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and Joint Council No. 43 of International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, as no legal process or summons was served upon any of their officers or agents and they have not voluntarily submitted to such jurisdiction.

The motions of the defendant, International Union, designated third and fourth defenses are sustained and the action as to it is dismissed with costs against the plaintiff.

The motion of the defendant, Joint Council No. 43 as to the first specification is sustained and as to the second specification is overruled as being moot and the action as to it is dismissed with costs against the plaintiff.

Motions to dismiss the first paragraph of the complaint were filed by the remaining seven defendants on the ground that it failed to state a claim against them upon which relief could be granted. These were unsupported by brief pursuant to the rules of this Court. However, the Court finds that the first paragraph of the complaint does state a claim and the motions to dismiss are overruled.

The action came on for trial to a jury September 29, 1958, upon which date the Court's ruling was made dismissing Joint Council No. 43 and the International Union after hearing thereon of September 24 and 25 requested August 26, 1958. Plaintiff filed its written motion for continuance of the case from the calendar immediately after the Court's ruling which motion is granted and the Clerk will remove the case from the September calendar.

### Order Oct. 28, 1958

It having come to the attention of the Court that certain rulings on the admission of evidence should be made prior to the entry of judgments of dismissal hereinafter more fully described and entered in this cause on September 29, 1958, the Court now sets aside its Judgment of Dismissal as to defendant, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, entered in this cause on September 29, 1958, and its Judgment of Dismissal as to defendant, Joint Council No. 43, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, entered in this cause on September 29, 1958, as well as its memorandum opinion and Findings of Fact and Conclusions of Law pertaining thereto and dated, and entered in this cause on, September 29, 1958.

And the plaintiff having previously offered its Exhibits X and Y into evidence in the preliminary hearing on the Third and Fourth Defenses set forth in the answer of defendant, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and on the motion to dismiss by Joint Council No. 43, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, which hearing was held September 24, and 25, 1958, and said defendants having previously objected thereto and the Court having withheld its ruling with respect thereto, the Court now sustains the objections of said defendants, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and

Joint Council No. 43, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, to plaintiff's said Exhibits X and Y.

And the Court now re-enters, as of and effective this date, its said Judgment of Dismissal as to defendant, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and its said Judgment of Dismissal as to defendant, Joint Council No. 43, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and its said memorandum opinion and Findings of Fact and Conclusions of Law without retyping the same but to be refiled and to carry a file mark of this date.

All of which is so ordered by the Court.