**William D. GILMOUR, Plaintiff,**

v.

**WOOD, WIRE AND METAL LATHERS INTERNATIONAL UNION, LOCAL NO. 74, et al., Defendants.**

**No. 61 C 1298.**

United States District Court
N. D. Illinois, E. D.

Oct. 9, 1963.

238

Kenart M. Rahn, Stansell, Rahn & Fleming, Chicago, Ill., for plaintiff.

Lester Asher, Leo Segall and Benjamin L. Jacobson, Asher, Gubbins & Segall, Chicago, Ill., for defendant Union.

Robert E. Cusack, Cusack & Cusack, Chicago, Ill., for defendant Employing Lathers Ass'n.

DECKER, District Judge.

This is a complaint in three counts, alleging in Count I the breach of a collective bargaining agreement between the plaintiff and defendant Union; in Count II, a secondary boycott by the defendant against the plaintiff; and in Count III, a conspiracy in violation of the Sherman Anti-Trust Act to the damage of the plaintiff. The jurisdiction of the Court is based on Section 301 of the National Labor Relations Act (29 U.S.C. § 185)—Count I; Section 303 of the National Labor Relations Act (29 U.S.C. § 187)—Count II; and Sections 1 through 8 of the Sherman Anti-Trust Act (15 U.S.C. §§ 1–7)—Count III.

Before getting into a detailed examination of the complaint, it is well to notice the basic inconsistency of the three counts which plaintiff alleges here. The first count alleges that the plaintiff became a party to a collective bargaining agreement both individually and as a member of an employers association to which the defendant Union was the other party. Count I demands damages for the breach of that agreement by the Union.

Count II alleges that, notwithstanding the collective bargaining agreement, the defendant Union caused a secondary boycott of the plaintiff by refusing to send or to allow union members to work for plaintiff.

Count III alleges that the very contract for whose breach plaintiff seeks damages in the first two counts is itself a conspiracy, in violation of the Anti-Trust laws of the United States.

Plaintiff Gilmour is a lathing contractor and an employer of the members of Local 74. Local 74 is a union which represents approximately 700 employees, commonly called lathers, and whose members are employed by the plaintiff and by other members of the Employing Lathers Association of Chicago and Vicinity, which Association is also joined as a defendant because it refused to join the action as a plaintiff. Also joined as a defendant is Jerome D. Kennedy, the President of Local 74, who is sued individually and on behalf of all the members of his Union.

*Motion to Dismiss or for Summary Judgment*

The defendants Kennedy and Local 74 have made a detailed motion to dismiss each of the three counts of the complaint and have filed voluminous briefs in support thereof. Their motion attacks the jurisdiction of the Court over the subject matter and the sufficiency of the com-

plaint to state a cause of action in each of the three counts.

Although it will unduly extend this opinion, I can see no other way to dispose of the motion than to examine each defect the defendants allege in the complaint and to comment briefly upon it.

*Count I:*

Gilmour alleges that on May 1, 1960, the Employing Association entered into a written contract with Local 74 which was to remain in effect until May 31, 1963, but which could be reopened on the issue of wages only after June 1, 1961, on 60 days' notice. On May 1, 1960, Gilmour was not a member of the Association, but on that date he entered into a written agreement with Local 74, which was identical to the one which the Association executed on behalf of its members with Local 74. Gilmour's individual agreement was to remain in effect until November 30, 1960. On August 18, 1960, Gilmour became a member of the Association, and Gilmour alleges that by so becoming a member, he adopted and ratified all the acts of its bargaining representative in executing the earlier collective bargaining agreement. However, plaintiff's individual agreement was extended to run until May 31, 1961. On June 1, 1961, the plaintiff alleges both the individual and the Employing Association agreement with Local 74 were in effect because of Section 8(d) (1) and (3) of the National Labor Relations Act (N.L.R.A.) (29 U.S.C. § 158(d) (1) & (3)). Since Local 74 failed to give the requisite 60 days' notice of termination prior to the expiration date of the contract, the individual contract continued to be in effect notwithstanding its termination date of May 31, 1961.

Under either agreement, both of which the plaintiff alleges were to remain in effect through May 31, 1963, it was the duty of Local 74 not to engage in a strike or boycott during the period of the agreement without first submitting any disputed question to arbitration in the manner provided for in the agreement. Notwithstanding this agreement to submit disputes to arbitration, plaintiff alleges that Local 74 has engaged in a strike against Gilmour, has directed its members not to perform services for Gilmour, has directed its members to report to the Union the locations at which Gilmour has contracted to perform any work, and has coerced its members to follow its instructions by threats of fines for any member who disregarded the orders of Local 74; it has also refused to issue "work permits" to any of its members who were employed by Gilmour. While allowing its members to finish work which was begun by Gilmour prior to May 31, 1961, Local 74 has ordered its members to engage in "slow-down activities" on these jobs, and has otherwise breached one or both of the two collective bargaining agreements alleged to be in effect through May 31, 1963.

Plaintiff alleges that because of the general practice among substantially all of the general contractors in the Chicago area to employ only subcontractors who employ members of A.F.L.-C.I.O. Unions, unless defendant is restrained from continuing its breach of the two collective bargaining agreements, plaintiff will continue to suffer irreparable injury to his business.

In addition to seeking injunctive relief, plaintiff seeks damages in the amount of $500,000.00.

To begin with, Section 301 of the N.L.R.A. (29 U.S.C. § 185) provides:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

Firstly, Section 301 does not allow suits against individual union members or officers, even though it does allow individual union members or officers to bring suits for breach of contract against

their employer. This does not seem to be equal treatment, but nevertheless, it is the law.

In Smith v. Evening News Association, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962), a suit by several individual members against an employer under Section 301 for breach of contract was allowed. However, in Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, at 1324–1325, 8 L.Ed.2d 462, at 470–471 (1962), it was held that while a suit for breach of a no-strike clause of a collective bargaining agreement could be brought by an employer against the union under Section 301, a suit would not lie against individual union members and officers for the same breach of contract. The Court stated:

> "When Congress passed § 301, it declared its view that only the union was to be made to respond for union wrongs, and that the union members were not to be subject to levy. Section 301(b) * * * exempts agents and members from personal liability for judgments against the union (apparently even when the union is without assets to pay the judgment). The legislative history of § 301(b) makes it clear that this third clause was a deeply felt congressional reaction against the Danbury Hatters case (Lowe [Loewe] v. Lawlor, 208 U.S. 274 [28 S.Ct. 301, 52 L. Ed. 488]; * * *) * * *.

> " * * * We have already said in another context that § 301(b) at least evidences 'a congressional intention that the union as an entity, like a corporation, should in the absence of agreement be the sole source of recovery for injury inflicted by it' * * *. This policy cannot be evaded or truncated by the simple device of suing union agents or members, whether in contract or tort, or both, in a separate count or in a separate action for damages for violation of a collective bargaining contract for which damages the union itself is li-

able. The national labor policy requires and we hold that when a union is liable for damages for violation of the no-strike clause, its officers and members are not liable for these damages. Here, Count II, as we have said, necessarily alleges union liability but prays for damages from the union agents. Where the union has inflicted the injury it alone must pay. Count II must be dismissed."

On the basis of this recent Supreme Court opinion, I must dismiss Count I as against Kennedy.

■■ Secondly, an employer cannot enjoin the union's activity, which, by breaching a no-strike clause of a collective bargaining agreement, is in breach of that agreement if that activity amounts to a "labor dispute" under the Norris-LaGuardia Act.[1] It has recently been held that a union work stoppage and strike which were also in breach of a collective bargaining agreement, clearly constituted a "labor dispute" within the meaning of the Norris-LaGuardia Act. Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440, 451 (1962).

■ While an employer or union can seek a declaratory judgment of its rights under a collective bargaining agreement or can compel specific performance of a contract provision which calls for arbitration, the Supreme Court has distinguished these permissible types of equitable relief from the injunction of a union's conduct which would be prohibited under the N.L.R.A. Therefore, if any relief is granted to this plaintiff at all under Section 301, it must be limited to the damages sought.

■ (1) Defendants' first point is that the complaint does not set forth sufficient facts to show that Gilmour is engaged in an industry affecting commerce within the meaning of Section 301. Section 2(7) of the N.L.R.A.[2] defines affecting commerce as " * * * in com-

---

1. 29 U.S.C. § 101.

2. 29 U.S.C. § 152(7).

merce, or burdening or obstructing commerce or the free flow of commerce, * * *."

Paragraphs 2 through 5 of Count I are the paragraphs which set forth the jurisdictional allegation. It should be remembered that plaintiff is not only suing individually but is suing as a member of an employers association, which association he has joined as a party defendant because it refused to join as a party plaintiff with him in this action. This is pursuant to Federal Rule 19(a).

In the language of Section 301, plaintiff alleges in paragraph 2 that the "Defendant * * * Local 74 * * * is a labor organization * * * in an industry affecting commerce, to-wit, the business of applying wood and metal lathing to buildings * * *. This industry affects commerce between the States of the United States for the reason that metal lathing materials are produced and fabricated for the most part in States other than the State of Illinois and are shipped into Illinois in interstate commerce."

In paragraph 3 plaintiff alleges that he is a lathing contractor and an employer of members of Local 74. In paragraphs 4 and 5 plaintiff alleges that the employers association is composed of lathing contractors, each of whom employs members of Local 74, and each of whom conducts his business in substantially the same way as plaintiff, purchasing and using metal lathing materials which are largely manufactured outside the State of Illinois. "Plaintiff is informed and verily believes that the aggregate amount of purchases of materials and supplies by members of the Association in interstate commerce during the most recent calendar year immediately prior to the doing of the acts complained of was substantially in excess of $50,000.00."

It would seem to me that these allegations in the complaint are sufficient allegations of jurisdiction under Section 301.

The defendant objects to the failure of plaintiff to include allegations as to the dollar volume of purchases of goods manufactured outside the State of Illinois which he himself purchases as distinguished from what the Employing Association purchases. I do not think that this objection is well taken in that the Employing Association is an involuntary party plaintiff under the Federal Rules with Gilmour, and in several cases Federal courts have held that the dollar volume of purchases in interstate commerce of the total members of the employers association, rather than of only one individual employer, is to be considered when testing Federal jurisdiction. Katz d/b/a Lee's Department Store v. N. L. R. B., 196 F.2d 411 (9 Cir. 1962), and Joliet Contractors Association v. N. L. R. B., 193 F.2d 833 (7 Cir. 1952).

Therefore, while I think that Gilmour as an individual employer might make so few purchases in interstate commerce as to not substantially affect it because of the operation of the *"de minimis"* rule, as a member of an employers association, his purchases, when aggregated with all the other members of the Association, can be taken into account. These purchases are alleged to exceed $50,000.00 per year, and I think that this is sufficient allegation of jurisdiction. The Union does not contest the allegations as to the Association's dollar purchases. It merely says that only Gilmour's purchases in interstate commerce ought to be considered. On this the Union is wrong.

(2) Secondly, Local 74 argues that if it has acted wrongfully, as alleged, jurisdiction is exclusively in the N.L.R.B. and not in the Federal courts. Originally, Gilmour filed unfair labor practice charges with the N.L.R.B. However, it should be noted that contrary to Local 74's implication, the jurisdiction of the N.L.R.B. and of the United States District Courts are quite independent of each other. Under Section 301 of the N.L.R.A. the United States District Courts are given jurisdiction for hearing "[s]uits for violation of contracts between an employer and a labor organization * * *", and the mere fact that

the same conduct by a union which is alleged to breach a contract might also constitute or give rise to charges of unfair labor practice before the N.L.R.B., is not sufficient to divest Federal courts of jurisdiction to hear the breach of contract suits. Smith v. Evening News Assoc., 371 U.S. 195, 83 S.Ct. 267, 9 L. Ed.2d 246 (1962).

Since this is a Section 301 suit, the "pre-emptive" doctrine of the Garmon case, by which all courts, state and Federal, are divested of jurisdiction over suits involving unfair labor practices which are reposed in the exclusive primary jurisdiction of the N.L.R.B., is inapplicable. The Court in the Smith case followed Local 174, Teamsters, etc. v. Lucas Flour Co., 369 U.S. 95, 101, at Footnote 9, 82 S.Ct. 571, 575, 7 L.Ed.2d 593; Charles Dowd Box Co. v. Courtney, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483; and Atkinson v. Sinclair Refining Co., 370 U.S. 238, 245, at Footnote 5, 82 S.Ct. 1318, 1323, 8 L.Ed.2d 462. All of these were Section 301 suits where it was held that the pre-emptive doctrine had no place. The Court expressly refused to apply the pre-emptive doctrine of San Diego Bldg. Trades Council, etc. v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed. 2d 775; Garner v. Teamsters, etc., Union, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228, and Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546. None of these latter cases was a Section 301 suit, but each involved attempts to litigate unfair labor practices as opposed to breaches of contracts in the courts.

There is a clear division of separate authority between the N.L.R.B., which hears exclusively charges of unfair labor practice, and the Federal courts, which hear exclusively of the N.L.R.B. (but co-extensively with state courts) suits alleging violation of collective bargaining contracts. See, Conference Report, House Report 510, 80th Congress, page 57, in commenting upon the Taft-Hartley Act of 1947:

"The power of the Board under this provision will not affect the availability to private persons of any other remedies they might have in respect to such activities. * * " U.S.Code Congressional Service 1947, p. 1164.

See also, Plumbers & Steamfitters Union, Local No. 598, v. Dillion, 255 F.2d 820, 823 (9 Cir. 1958), where the Court held:

"The breach of contract may, as here, also be the source of an unfair labor practice cognizable by the N.L.R.B., but the District Court is not thereby deprived of jurisdiction over the private action for breach."

(3) Local 74 next contends that if either or both of the agreements alleged in the complaint are in effect, then the complaint should be dismissed, because the plaintiff has failed to allege exhaustion of the remedies for handling grievances under those contracts, which are contained in both contracts. Plaintiff relies on paragraph 15 of Count I of the complaint where Gilmour alleges that, "Under the terms of said agreement or agreements heretofore referred to, it was and is the duty of the defendant Local 74 and each of its members to perform services as employee of the plaintiff and not to engage in a strike or boycott during the period said agreement was to continue in existence without first submitting disputed questions, if any, to arbitration in the manner provided for in said agreement. Plaintiff has in all respects complied with the terms of said agreement * * *." In addition, plaintiff has alleged that Local 74 violated the "no-strike" clause in the contract, and Gilmour argues that the Union violation of the "no-strike" clause is not a grievance, and therefore not an arbitrable matter. Therefore, if the employer is not given the right to sue the union for breach of its contract, and expressly for breach of the "no-strike" clause, the employer, Gilmour, will be left without a remedy.

The law in regard to requirements for employers and labor organizations to submit their disputes and grievances to arbitration before coming to the courts has just recently been expounded by the

Supreme Court in a series of cases. Beginning with the Steelworkers' trilogy in United States Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, et seq., 80 S. Ct. 1347, 4 L.Ed.2d 1409, it was held that the issue of arbitrability is a question for the courts and is to be determined from the terms of the contract entered into by the parties. The Federal courts are expounding Federal common law in this field, and state law is inapplicable insofar as it conflicts with the Federal common law of labor relations. In the case of Atkinson v. Sinclair Refining Co., supra, the Court held that the company could sue for damages for breach of contract because of the union's violation of a no-strike clause, without submitting first its claim to arbitration. The reason Atkinson so held was because of the express terms of the collective bargaining agreement. There, there was a no-strike clause and a clause relating to general disputes, which provided that general disputes should be negotiated rather than arbitrated. Finally, there was an arbitration clause, which was very narrowly drawn and provided that only employees' grievances should be subject to arbitration. There was no way in which an employer's grievances could be taken to arbitration, and arbitration boards were precluded from considering any other matters than employee grievances. The Court held (at pp. 241–242 of 370 U.S., 82 S.Ct. at p. 1321, 8 L.Ed. 2d 462):

"[T]he parties did not intend to commit *all* of their possible disputes and the whole scope of their relationship to the grievance and arbitration procedures * * *." (Emphasis supplied.)

On the basis of this distinguishing feature in the contract, the Court distinguished this case from Drake Bakeries v. Local 50, American Bakery & Confectionery Workers, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962). In that case the arbitration clause provided that:

" '(a) The parties agree that they will promptly attempt to adjust all complaints, disputes or grievances arising between them involving questions of interpretation or application of any clause or matter covered by this contract or any act or conduct or relation between the parties hereto, directly or indirectly.' " (370 U.S. at 257, 82 S.Ct. at 1348, 8 L.Ed.2d 474)

The Court stated at pages 258–259 of 370 U.S., at page 1349 of 82 S.Ct., 8 L.Ed.2d 474:

"Article V does not stop with disputes 'involving questions of interpretation or application of any clause or matter' covered by the contract. The adjustment and arbitration procedures are to apply to all complaints, all disputes and all grievances involving any act of either party, or any conduct of either party, or any relation between the parties, directly or indirectly. The company asserts that there was a strike by the union in violation of the no-strike clause. It therefore has a 'complaint' against the union concerning the 'acts' or 'conduct' of the union. There is also involved a 'dispute' between the union and the company, for the union denies that there was a strike at all, denies that it precipitated any strike, denies that the employees were obligated under the contract to work on that January 2, and itself claims that the employer breached the contract in scheduling work for the holidays. Article V on its face easily reaches the employer's claim against the union for damages caused by an alleged strike in violation of the contract.

"The company earnestly contends that the parties cannot have intended to arbitrate so fundamental a matter as a union strike in breach of contract, and that only an express inclusion of a damage claim by the employer would suffice to require arbitration. But it appears more reasonable to us to expect such a matter, if it is indeed so fundamental and so basic to the company under the contract, to have been excluded

244

from the comprehensive language of Article V if the parties so intended."

Another recent case in which the Supreme Court allowed a suit for damages by an employer against a union for breach of an "implied no-strike clause" was Teamsters, etc. v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962). But there again, as distinguished from Drake Bakeries, the dispute had been submitted to arbitration, and the arbitrator had ruled upholding the employer prior to the time the lawsuit for damages came to trial.

In our case the collective bargaining agreement is appended to the complaint as Exhibit A. Section 3 of Article I provides:

"Any dispute or grievance between an employee and his employer covered by this Agreement, or between the Employer and the Union, shall be taken up in accordance with the following procedure: * * *" [Then follows a description of the selection of arbitrators by the union and the employer.]

Section 5 provides:

"(a) The Employer and the Union hereby agree that in the manner herein set forth they will submit to the arbitration procedure all grievances and disputes that may arise between them and any misunderstanding as to the meaning or intent of all or any part of this Agreement; and they further agree that work will go on undisturbed during such arbitration proceeding, and that the decision of the Joint Board of Arbitrators or the Impartial Arbitrator, as the case may be, shall be final and binding on all parties hereto."

The language of these two provisions seems clearly to take the case at bar within the exact ambit of Drake Bakeries rather than Atkinson. *"All"* disputes and grievances between the employer and the union *"shall"* be taken to arbitration. There is no limitation of the types of disputes between the employer and the union which are to go to arbitration, nor is the language permissive or discretionary; rather, it is mandatory.

■ In Drake Bakeries, instead of dismissing the complaint, the Court ordered that the action be stayed pending the outcome of arbitration. I think the same course should be followed here as to Count I. By doing this, this Court will only take jurisdiction of Count I if the arbitrator enters an award in favor of the employer and against the Union for damages occasioned by the Union's breach of the no-strike clause. Assuming that such an award is made, then the employer would be in a position to return to this Court and amend Count I to sue for enforcement of the arbitrator's order. This would appear to be the practice which the Supreme Court approves.

■ Regarding the employer's contention that the Illinois law at the time this contract was entered into in May of 1961 made non-enforceable the agreement to arbitrate disputes which might arise in the future, it is clear from the Supreme Court case quoted above that the Illinois law on the subject is irrelevant.

(4) The only other argument Local 74 makes is that the collective bargaining agreement does not contemplate the granting of damages to the employer if the union breaches the no-strike clause of the agreement. This question, however, will only become relevant after the arbitration procedure is exhausted by the employer, since I am entering an order staying proceedings on Count I pending the outcome of arbitration.

*Count II:*

Count II of the complaint alleges the same basic facts as appeared in Count I. Jurisdiction is grounded on Section 303 of the N.L.R.A. (29 U.S.C. § 187), which provides as follows:

"(a) It shall be unlawful, for the purposes of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 158(b) (4) of this title.

"(b) Whoever shall be injured in his business or property by reason of any violation of subsection (a) of this section may sue therefor in any district court of the United States subject to the limitations and provisions of section 185 of this title without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit."

Section 8(b) (4) of the N.L.R.A. (29 U.S.C. § 158(b) (4)) declares it to be an unfair labor practice by a labor organization or its agents to induce or encourage the employees of a third party or neutral employer, or to threaten, coerce or restrain directly any neutral or third person employer, where the objects of such inducements or threats are in effect the forcing of any secondary neutral or third person employer to cease doing business with the primary employer with whom the union in question has a labor dispute.

Basically, the purpose of the Section is to keep labor disputes confined to the parties between whom negotiations for settlement should properly take place. If a union has a dispute as representative of employees who are employed by employer A, this law seeks to make the union confine its strike and picketing activities to employer A only. It forbids the union from striking or picketing employers B, C or D who happen to be customers of employer A in order to exert pressure on them, hoping that they will withhold their business from employer A and give the union greater leverage in its dispute with employer A.

What this Section does is to prohibit all secondary strikes, picketing or boycotts and limit unions to striking, picketing or boycotting only the primary employer.

Plaintiff Gilmour alleges in paragraph 12 that by reason of Section 8(b) (4)[3]

of the N.L.R.A., "* * * it also became the duty of said defendants to refrain from encouraging members of Local 74 to refuse to perform services for the plaintiff for the sole purpose of causing him to cease doing business with other persons."

Notwithstanding this duty, in paragraph 13 Gilmour alleges a list of approximately twenty acts which Gilmour claims are violations of Section 8(b) (4). Suffice it to say that most of these do not amount to allegations of secondary boycotts in violation of Section 8(b) (4). However, one of the subparagraphs, (n), does vaguely allege the "calling meetings of plaintiff's customers and various employees of plaintiff's customers for the purpose of determining 'what is to be done about Gilmour (the plaintiff)'."

I do not think this simple allegation is sufficient to charge a violation of Section 8(b) (4).

Paragraph 19 alleges that Local 74 refused to issue work permits and conducted strikes and refused to perform any work for the plaintiff unless workers whom the plaintiff had employed, who did not belong to Local 74, were removed from the job. This in itself does not sufficiently allege a secondary boycott in violation of Section 8(b) (4) (29 U.S.C. § 158(b) (4)). The allegation by its very terms charges that the Union was striking plaintiff, not any of plaintiff's customers.

Paragraph 20 of Count II alleges:

"Plaintiff avers that the object of the aforesaid strike and refusal to perform service and of inducing members of Local 74 not to perform services for the plaintiff in connection with certain jobs not reported to Local 74 prior to May 31, 1961, is to compel the plaintiff to cease doing business with one Anning Johnson Company, Incorporated, a general contractor engaged in commerce. Plaintiff avers that at no time material hereto was there a dispute between the plaintiff and Lo-

3. 29 U.S.C. § 158(b) (4).

cal 74 with respect to wages and conditions of employment."

This paragraph shows such a patent misunderstanding of Section 303 (29 U. S.C. § 187) that I think it is conclusive in showing that the plaintiff fails to state a cause of action in Count II. First of all, plaintiff has alleged in the last sentence of paragraph 20 that at no time was there a dispute between plaintiff and Local 74 with respect to wages and conditions of employment. This entire complaint in all of its three counts alleges nothing if it does not allege a dispute between Gilmour and Local 74.

 Moreover, there are no facts alleged in the complaint charging Local 74 with either striking, picketing or boycotting the Anning Johnson Company with the object of seeking to compel Anning Johnson to cease doing business with the plaintiff, the primary employer.

As Count II now stands, it fails to state any facts which would entitle plaintiff to relief under Section 303. The motion to dismiss Count II will therefore be granted.

*Count III:*

Count III is probably the real heart of this lawsuit. In it plaintiff alleges that the Employing Lathers Association, Local 74, and Jerome D. Kennedy, individually and as a representative of the members of Local 74, engaged in a conspiracy in violation of Sections 1 through 8 of the Sherman Anti-Trust Act (15 U.S.C. §§ 1–7).

The peculiar thing about Count III is that Gilmour alleges that the very contract for whose breach he is suing under Count I amounted to a written agreement in restraint of trade under the Anti-Trust laws, and among other things, he seeks to have this agreement declared to be in violation of the Anti-Trust laws. Specifically, Gilmour alleges that the contract provided that no person, firm or corporation could engage in business as a lathing contractor and hire members of Local 74 until the person, firm or corporation was approved by Local 74.

Plaintiff further avers that beginning on or about the 1st day of March, 1961, defendants, the Association and Local 74, conspired and confederated together with respect to the business of the plaintiff. As overt acts Gilmour realleges all of the acts enumerated in paragraph 13 of Count II. Plaintiff seeks a trebling of his damages of $500,000.00 in Count III.

 (1) The defendants first argue that the Court lacks jurisdiction over the defendant Union because it is an unincorporated association. Local 74 argues that this is presumably a representative class action against the Union under Rule 23 of the Federal Rules of Civil Procedure and that naming Kennedy as a representative of the class is insufficient to give the Court jurisdiction over the Union.

Plaintiff correctly, it seems to me, argues that this objection is not well founded for various reasons. First, Rule 23 specifically allows class actions to be maintained where "one or more" persons are named as the representative of the class. Since here the person named as representative of the class is the president of the Union, it would seem to me that he would adequately represent the class, and this is the only test under Rule 23 for authorizing suits against a class by suing a representative.

Further, under Rule 17(b) of the Federal Rules of Civil Procedure, it is expressly stated:

"In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States, * * *."

Therefore, even if the law of Illinois does not allow suits against unincorporat-

ed associations, since the plaintiff seeks to enforce a substantive right created by the Anti-Trust laws of the United States against the defendant unincorporated Association, Rule 17 would appear to be satisfied.

(2) Local 74 again argues that jurisdiction is exclusively in N.L.R.B. I think it is sufficient to dispose of this contention to cite Jewel Tea Company v. Local Unions Nos. 189, etc., 274 F.2d 217 (7 Cir. 1960). There it was alleged that the defendant union had entered into a conspiracy to suppress competition among retail markets in the Chicago area by prohibiting the sale of meat products before 9 A.M. or after 6 P.M. To the same argument which was made in that case by the defendant union, the Court said (at pages 220–221 of 274 F.2d):

> "The core of appellants' position in their motion to dismiss is that 'the provisions pertaining to market operating hours and the basic work day are opposite sides of the same coin,' since, as they assert, a change in one automatically affects the other. And because one side of this coin, hours of employment, is governed by the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., *ipso facto* the reverse side is also within the exclusive regulatory scope of that act. Not only is the conclusion fallacious, but also the basic premise from which it is derived."

(3) Next Local 74 contends that the alleged restraint of trade does not affect interstate commerce, and therefore is not within the purview of the Sherman Anti-Trust Act because the combination and conspiracy alleged are purely local, the combination and conspiracy alleged have only local purposes and the combination and conspiracy alleged have only local effects.

At the outset, the rule is clear that:

> "Interference with intrastate activity cannot constitute a violation of the Sherman Act unless its effect on interstate commerce is both substantial and direct."

See, among others, Elizabeth Hospital, Inc., v. Richardson, 269 F.2d 167 (8 Cir. 1959), and Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570.

The plaintiff does not contest that rule, but argues that the present conspiracy alleged in Count III, although it is restricted to Cook County, Illinois, has direct and substantial effects upon interstate commerce. As authority for its position, Gilmour cites United States v. Employing Lathers Ass'n, 347 U.S. 198, 74 S.Ct. 455, 98 L.Ed. 627. There it was held that the same defendant, Local 74, among other conspirators, including the present defendant, Employing Lathers Association, was properly charged with a violation of Section 1 of the Sherman Act. In reversing a dismissal for want of jurisdiction and remanding the case, the Supreme Court said (at page 199 of 347 U.S., at page 456 of 74 S.Ct., 98 L.Ed. 627):

> "A substantial quantity of lathing material used on Chicago jobs is produced in states other than Illinois, sold by the producers to Chicago building material dealers, shipped interstate either to the Chicago dealers or to their plastering contractor customers, and finally delivered by the plastering contractor to his lathing contractor for use on local building jobs. The alleged conspiracy here is among these lathing contractors and the union whose members do the actual lathing."

The Court held that allegations embodying these facts, if proved upon the trial of the case, would constitute a violation of the Sherman Anti-Trust Act.

On the strength of this case, which involved the same defendants, I think that the allegations of the complaint in Count III are sufficient to sustain jurisdiction.

(4) Defendants next argue that Local 74 is exempt from the application of the Anti-Trust laws by reason of Section 6

of the Clayton Act (15 U.S.C. § 17). Section 6 of the Clayton Act states that:

"Nothing contained in the antitrust laws shall be construed to forbid the existence and operation of labor * * * organizations, * * * or to forbid or restrain individual members of such organizations from lawfully carrying out the legitimate objects thereof; nor shall such organizations, or the members thereof, be held or construed to be illegal combinations or conspiracies in restraint of trade, under the antitrust laws."

 This is all very true. However, it does not go far enough, as the plaintiff points out. When a union acts in concert with employer groups, even though their activity concerns a labor dispute, the immunity of Section 6 of the Clayton Act does not apply to the labor unions. Here it is alleged that the Union acted as a co-conspirator with an employers association and with the president of the Union to put the plaintiff out of business in restraint of trade. This is a sufficient allegation of ultimate facts to take the labor union out of the statutory exemption granted for it when it acts independently and not in conspiracy with an employer group. See Allen Bradley Co. v. Local Union No. 3, etc., Electrical Workers, 325 U.S. 797, 65 S.Ct. 1533, 89 L.Ed. 1939, and many later cases, the most recent being, Los Angeles Meat & Provision Drivers, etc., v. United States, 371 U.S. 94, 83 S.Ct. 162, 9 L.Ed. 2d 150 (1962).

(5) The defendants seek to have Count III dismissed against Jerome D. Kennedy because there are no acts alleged to have been performed by Kennedy in his individual capacity. Paragraph 13 of Count II, however, which is incorporated by reference in Count III, alleges that Jerome D. Kennedy, "individually and on behalf of the members of * * * Local 74" did the enumerated acts therein. For this reason, I would think that defendants' objection is insubstantial.

 (6) Defendants contend that this Court lacks the power to grant the relief requested in the prayer for relief. The first prayer for relief objected to is that the Court decree that the collective bargaining agreement between plaintiff and Local 74 did not expire on May 31, 1961, but was in effect at the time of the commission of the acts complained of. Secondly, the plaintiff prays for a temporary injunction, restraining Local 74 from further breaches of the contract. Defendants argue that neither of these two prayers have anything to do with the Anti-Trust laws of the United States. This is probably true, and plaintiff concedes this in his reply brief. However, there is only one common prayer for relief at the end of the complaint. The plaintiff has not divided its prayer for relief so that each prayer appropriately follows each of the three counts; rather, all three are joined together at the end of the complaint. This general prayer includes a prayer for both damages and treble damages. It seems to me that this is sufficient.

 (7) Initially the defendants argued because the complaint does not allege an injury to the public but rather alleges an injury to the plaintiff, it fails to allege a cause of action under the Anti-Trust laws. Since the decision in Radiant Burners, Inc. v. Peoples Gas, etc., Co., 364 U.S. 656, 81 S.Ct. 365, 5 L.Ed. 2d 358, it is no longer necessary in a private treble damage action to allege injury to the public. Therefore, defendants' objection, which was made prior to the decision of the Radiant Burners case, is no longer of merit. Defendants now concede this.

 (8) Finally, defendants seek to dismiss Count III of the complaint for the reason that the complaint on its face shows that there is no basis for the plaintiff's assertion that the contract appended to the complaint as Exhibit A by itself constitutes an agreement in restraint of trade.

I have read and reread the contract, and I can find no express or implied provision which imposes any restriction of any kind upon the entry of anyone into

the lathing contracting business in the City of Chicago. The contract contains no provision, as alleged by plaintiff, requiring the prior approval of Local 74 before engaging in the lathing contracting business.

If this were the only allegation in the complaint alleging an agreement or conspiracy in restraint of trade, defendants would be correct in their contention that Count III should be dismissed. However, paragraph 13 also alleges that "beginning on or about the 1st day of March 1961 defendants the Association and Local 74 conspired and confederated together with respect to the business of the plaintiff," and that "pursuant to said conspiracy said defendants did one or more or all of the acts and omissions set forth in paragraph 13 of Count II."

It seems to me that plaintiff should be permitted to introduce his evidence in regard to the alleged conspiracy as between the employers association and the Union.

This case is unlike Weir v. Chicago Plastering Institute, 272 F.2d 883 (7 Cir. 1959), which the defendants rely upon. In the Weir case the Seventh Circuit held, *after hearing evidence,* that there was no proof of a conspiracy among the defendants in restraint of trade. The Weir case was not concerned with the sufficiency of the complaint in the first instance, but only with the insufficiency of the evidence which was produced in that case to support the charges made in the complaint.

For the reasons indicated, it is my opinion that Count III sufficiently states a cause of action to require an answer on the part of the defendants.

In conclusion, insofar as it affects Local 74 and the employers association, Count I is hereby stayed pending arbitration between the Union defendant and the employer plaintiff. Insofar as it affects Kennedy, individually, Count I is dismissed.

Count II is dismissed in its entirety for failure to state a claim upon which relief can be granted in that no secondary picketing, striking or boycotting of

of any of Gilmour's (the primary employer's) customers is alleged.

Defendants' motion to dismiss Count III is denied, because plaintiff has sufficiently stated a claim upon which relief can be granted and the Court has jurisdiction of the subject matter.

An order has been entered in accordance with this opinion as of this date.