SIDNEY WANZER & SONS, INC., a corporation, Plaintiff,

v.

MILK DRIVERS UNION, LOCAL 753, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS OF AMERICA., etc., et al., Defendants.

No. 65 C 1093.

United States District Court
N. D. Illinois, E. D.
Feb. 3, 1966.

Edward R. Lev and Burton E. Glazov, Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., for plaintiff.

William T. Kirby and Alan O. Amos, Hubachek, Kelly, Miller, Rauch & Kirby, Chicago, Ill., for defendants.

DECKER, District Judge.

Plaintiff dairy company, Sidney Wanzer & Sons, Inc. ("Wanzer") brings this suit under § 301 of the Labor Management Relations Act (29 U.S.C. § 185)

against Milk Drivers' Union, Local 753 ("Local 753") and two officers of the Local. The suit grows out of an alleged demand by Local 753 for overtime wages in accordance with the wage scale of Article 41 of the parties' Collective Bargaining Agreement ("Agreement"). Wanzer has denied its liability for these overtime wages. The complaint alleges that Local 753 has refused to arbitrate this dispute under the Article 6 arbitration clause in the Agreement, and that Local 753 has attempted to compel payment of overtime wages by engaging in periodic work stoppages in violation of Article 6.

Wanzer seeks specific performance of the arbitration clause, and compensatory and exemplary damages for the alleged breaches of the Agreement. Local 753 moves to dismiss on the ground that this dispute is not arbitrable under the terms of Article 6, and that exemplary damages cannot be awarded under § 301. The individual defendants move to dismiss on the ground that they cannot be sued under § 301. The individual defendants' motion to dismiss is denied; Local 753's motion to dismiss is denied; treating the motion to dismiss on the ground that exemplary damages cannot be awarded under § 301 as a motion to strike portions of the complaint, Local 753's motion to strike is denied.

I.

The first question is whether this dispute is arbitrable under the terms of the Agreement. Article 6 reads as follows:

"ARTICLE 6. Any matter in dispute, between the Union and Employer [excepting wages and hours as set forth in Articles 4, 37 and 41 and questions of jurisdictional matters, as decided by Teamsters Joint Council No. 25, which cannot be settled], shall be referred by either party to an Industry Labor Committee consisting of three [3] representatives of Employers, parties to this Agreement, and three [3] representatives of the Union. It shall be the duty of this Committee to

hear and dispose of all complaints raised by either party to this Agreement concerning violations thereof that cannot be settled amicably between the parties. If this Committee is equally divided on any such complaint, the Chief Justice of the Municipal Court of Chicago or his nominee shall be called in to act as the impartial member of said Committee, and his decision shall be final. No action shall be taken by either party to the Agreement pending the decision of this Committee."

While Local 753 argues that this dispute concerns "wages and hours" and is therefore within the exception to Article 6, Wanzer claims that the dispute turns on Article 20 of the Agreement, the "most favored nation" clause, which reads as follows:

"ARTICLE 20. Should the Union hereafter enter into any agreement with any milk dealer upon terms and conditions more advantageous to such dealer than the terms and conditions of this Agreement, or should the Union sanction a course of conduct by any milk dealer who has signed this form of agreement enabling him to operate under more advantageous terms and conditions than those provided for in this Agreement, the Employer shall be entitled to adopt such terms and conditions in lieu of those contained in this Agreement."

Matters within the scope of Article 20 are, presumably, arbitrable. The question is whether this is a "wages and hours" dispute, or an Article 20 dispute.

Wanzer concedes that it would have to pay overtime wages under normal circumstances. Relief from this obligation is claimed solely on the ground that Article 20 permits Wanzer to avoid overtime payments when Local 753 permits Wanzer's competitors to avoid such payments. The central issue in this dispute is whether Article 20 excuses Wanzer from overtime payments under the circumstances of this case. Once the Article 20 issue is settled, the entire dispute is settled. Overtime wages may be the object of the dispute, but they are not its subject. This is an Article 20 dispute, and therefore within the scope of Article 6.

The motion to dismiss on the ground that the dispute is not arbitrable is denied.

## II.

■ The individual defendants, officers of Local 753, move to dismiss as to them on the ground that individuals cannot be sued under § 301. In support of this argument, Local 753 points out that the language of the statute and its legislative history suggest that the primary focus of Congress was on suits involving labor organizations, not individuals.[1] The legislative history is conveniently reviewed in Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

The language of the statute was the basis for a holding by the Seventh Cir-

---

1. "Suits by and Against Labor Organizations

"Sec. 301. (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

"(b) Any labor organization which represents employees in an industry affecting commerce as defined in this Act and

any employer whose activities affect commerce as defined in this Act shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.

"(c) For the purposes of actions and proceedings by or against labor organizations in the district courts of the United

cuit that an individual could not sue under § 301. United Protective Workers of America v. Ford Motor Co., 194 F.2d 997 (7th Cir. 1952). In Red Ball Motor Freight, Inc. v. General Drivers Local 961, 202 F.Supp. 904 (D.Colo.1962), an employer's suit to enforce an arbitration clause, the District Court said:

"This legislative background shows plainly that Congress intended to create a remedy applicable to unions. It dispels any possible doubt as to whether it can be read so as to authorize a remedy by or against an individual." Id. at 906.

The conclusions of both *United Protective Workers* and *Red Ball* were undermined by the Supreme Court in Smith v. Evening News Association, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). The Court held that individuals could sue under § 301 to enforce "individual" rights derived from collective bargaining agreements.[2] However, *Smith* says nothing about suits *against* individuals.

Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962) does. Defendants cite *Atkinson* in support of their motion; the effect of the case is quite the opposite. *Atkinson* was a suit by an employer against a union and some individual union members for damages for breach of a "no-strike" clause. The Court held that the individual defendants could not be held liable:

"When Congress passed § 301, it declared its view that only the union

States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members.

"(d) The service of summons, subpena, or other legal process of any court of the United States upon an officer or agent of a labor organization, in his capacity as such, shall constitute service upon the labor organization.

"(e) For the purposes of this section, in determining whether any person is acting as an 'agent' of another person so

was to be made to respond for union wrongs, and that the union members were not to be subject to levy." Id. at 247–248, 82 S.Ct. at 1324.

I reached the same conclusion in Gilmour v. Wood, Wire and Metal Lathers, 223 F.Supp. 236 (N.D.Ill.1963), relying on *Atkinson*. However, these results are based on the clear indications of Congressional intent found in § 301(b):

"Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets."

The statute suggests that a suit for damages against individual union members for union breaches of contract cannot be successful under § 301.

Wanzer does not seek damages against the individual defendants. Consequently, the bar of § 301(b) and *Atkinson* is not applicable. Furthermore, the Court explicitly held that the suit against individuals in *Atkinson* was a § 301 suit:

"When a union breach of contract is alleged, that the plaintiff seeks to hold the agents liable instead of the principal does not bring the action outside the scope of § 301." 370 U.S. at 247, 82 S.Ct. at 1324.

At this point in the opinion, the Court added, in footnote 6:

"Our holding, however, is that the suit is a § 301 suit; whether there

as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling."

2. The "individual right" in *Smith* was the right to report for work during a strike by another union. See also, Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), a suit by an individual employee for severance pay pursuant to the collective bargaining agreement; Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964), a suit by an individual employee to enjoin an arbitration award affecting his own seniority rights.

is a claim upon which relief can be granted is a separate question." [3] Where relief other than damages is sought, the suit is likewise a § 301 suit. The "separate question" of whether there is a claim upon which relief can be granted can be answered affirmatively where, unlike in *Atkinson*, § 301(b) is not a barrier.

The lesson is clear. "Section 301 has been applied * * * to suits against individual union members for violation of a no-strike clause contained in a collective bargaining agreement. Atkinson v. Sinclair Refining Co." Smith v. Evening News Association, 371 U.S. 195, 199–200, 83 S.Ct. 267, 270, 9 L.Ed.2d 246 (1962). Section 301 can be applied similarly here.

The individual defendants further argue that even if they can be sued under § 301, plaintiff has otherwise failed to state a claim against them on which relief can be granted. While under normal circumstances in suits of this type relief against individuals is either unnecessary or inappropriate, I cannot say at this early stage of litigation that such relief could not be granted here. Since retention of these defendants will cause neither substantial added expense nor inconvenience, there is no harm in denying their motion to dismiss at this time.

The motion to dismiss of the individual defendants is denied.

### III.

Plaintiff seeks exemplary damages from Local 753 as a deterrent to future breaches of the Agreement; Local 753 argues that such damages can never be awarded under § 301. Since the statute is silent on the question—it neither bars nor allows exemplary damages explicitly—the courts must determine the intent of Congress.

The statute is to be applied to obtain industrial peace. This controlling principle was set forth in Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), in which the Supreme Court reviewed the legislative history of § 301 and said:

"Thus collective bargaining contracts were made 'equally binding and enforceable on both parties.' [Senate Report No. 105, 80th Cong., 1st Sess., p. 15.] As stated in [House of Representatives Report No. 245, 80th Cong., 1st Sess., at p. 6], the new provision 'makes labor organizations equally responsible with employers for contract violations and provides for suit by either against the other in the United States district courts.' To repeat, the Senate Report, supra, p. 17, summed up the philosophy of § 301 as follows: 'Statutory recognition of the collective agreement as a valid, binding, and enforceable contract is a logical and necessary step. It will promote a higher degree of responsibility upon the parties to such agreements, and will thereby promote industrial peace.'

"Plainly the agreement to arbitrate grievance disputes is the *quid pro quo* for an agreement not to strike. Viewed in this light, the legislation does more than confer jurisdiction in the federal courts over labor organizations. It expresses a federal policy that federal courts should enforce these agreements on behalf of or against labor organizations and that industrial peace can be best obtained only in that way." Id. at 454–455, 77 S.Ct. at 916.

See also Dowd Box Co. v. Courtney, 368 U.S. 502, 509, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962).

Vigorous enforcement of collective bargaining agreements in the quest

---

3. At pages 5 and 6 of their brief, defendants cite the following two cases for the proposition that "Section 301 cannot be invoked to assert jurisdiction over individual union members." Morgan Drive Away, Inc. v. IBT, 166 F.Supp. 885 (S.D.Ind.1958); Square D Co. v. United Electrical, Radio and Machine Workers, 123 F.Supp. 776 (E.D.Mich. 1954). Both cases have been implicitly overruled by *Atkinson*, as the Court suggests in its footnote 6.

for industrial peace is to proceed by the use of federal substantive law.

"The question then is, what is the substantive law to be applied in suits under § 301(a)? We conclude that the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws. * * * The Labor Management Relations Act expressly furnishes some substantive law. It points out what the parties may or may not do in certain situations. Other problems will lie in the penumbra of express statutory mandates. Some will lack express statutory sanction but will be solved by looking at the policy of the legislation and fashioning a remedy that will effectuate that policy. The range of judicial inventiveness will be determined by the nature of the problem." 353 U.S. at 456–457, 77 S.Ct. at 918.

*Lincoln Mills* instructs district courts to fashion appropriate remedies under § 301 to obtain industrial peace. The question is whether exemplary damages is a permissible remedy under this mandate.

The mandate is not absolute. For example, injunctions may not be issued to prevent breaches of no-strike clauses. Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962). However, this limitation on *Lincoln Mills* is commanded by the explicit prohibition of anti-strike injunctions in § 4 of the Norris-LaGuardia Act (29 U.S.C. § 104). No similar explicit statutory bar obstructs the award of exemplary damages under § 301.

The one Court that has heretofore considered this problem in depth has held that exemplary damages cannot be awarded under § 301. United Shoe Workers of America, AFL–CIO v. Brooks Shoe Mfg. Co., 298 F.2d 277 (3d Cir. 1962). The Third Circuit divided 5–3 on the question. While the majority clearly intended to state a general rule that exemplary damages are never authorized under the statute, *Brooks Shoe* is distinguishable on its facts from the

case at bar. The suit there was against an employer who had closed his plant in violation of a runaway shop clause in the collective bargaining agreement. With the plant closed and the employer gone, an award of exemplary damages would not have directly advanced the cause of industrial peace. Where the goal of § 301 is out of reach, the tools provided by *Lincoln Mills* are inappropriate.

Not all situations are as hopeless. Where labor and management continue in a working relationship punctuated by occasional skirmishes of economic warfare, industrial peace is disturbed temporarily, rather than permanently. A remedy which would effectively deter future disturbance would carry the sanction of the important purpose of § 301: the regaining and maintaining of industrial peace. Unlike the situation in *Brooks Shoe*, which had deteriorated beyond the point of remedy, some situations may be saved by the invocation of stern remedies such as exemplary damages.

Given the consistency of this remedy with the theory of *Lincoln Mills*, the question remains whether there is a substantial argument for barring such an award under § 301. Local 753 relies on § 303 of the Labor-Management Relations Act (29 U.S.C. § 187), which provides for suits for violations of the secondary boycott provisions of the Act. It reads as follows:

"(a) It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 158(b)(4) of this title.

"(b) Whoever shall be injured in his business or property by reason or [sic] any violation of subsection (a) of this section may sue therefor in any district court of the United States subject to the limitations and provisions of section 185 of this title without respect to the amount in controversy, or in any other court

having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit."

Chief Judge Biggs made the argument based on § 303 in *Brooks Shoe:*

"Section 303 * * * indicates that Section 301 * * * does not contemplate the imposition of punitive awards. Congress in dealing with the tortious conduct prohibited by the Act clearly limited recovery to compensatory damages and costs. Note the language of Section 303(b) which provides that the injured employer 'shall recover the damages by him sustained and the cost of the suit.' See United Mine Workers of America v. Patton, 211 F.2d 742, 749–750, 47 A.L.R.2d 850 (4 Cir.), cert. denied 348 U.S. 824, 75 S.Ct. 38, 99 L.Ed. 649 (1954). If my assumption be correct Congress should not be credited with the intention of authorizing punitive awards for causes of ·action arising under Section 301, the contract section, of the law. It is the general policy of the federal labor laws, to which the federal courts are to look for guidance in Section 301 actions, to supply remedies rather than punishments. This was indicated by the Supreme Court in Republic Steel Corp. v. N.L.R.B., 311 U.S. 7, 10–13, 61 S.Ct. 77, 85 L.Ed. 6 (1940)." 298 F.2d at 284.

First, it appears to me, that this argument ignores the fact that § 303 is explicitly made subject to § 301, rather than the other way around. Furthermore, the argument fails to explain why the limitations imposed by Congress on secondary boycott suits logically ought to be applied to contract suits. No reason is clear on the face of the statute.[4]

The core of Chief Judge Biggs' argument is that the general policy of the federal labor laws is "to supply remedies rather than punishments." The statement, while correct, is somewhat ambiguous, since courts often impose "punishments" for the explicit purpose of deterring future misconduct, a distinctly remedial notion. The distinction between "remedies" and "punishments" must be more precisely drawn in the context of labor law.

 Federal labor laws are strictly "remedial" in the sense that they are to be applied only to redress particular acts of misconduct; imposition of sanctions which exceed what is necessary to pacify the particular labor-management irritation before the court are not permitted. Such excessive sanctions would be "punishments." Republic Steel Corp. v. N.L.R.B., 311 U.S. 7, 10–13, 61 S.Ct. 77, 85 L.Ed. 6 (1940), cited by Chief Judge Biggs, makes it clear that the labor laws do not contemplate awards which do not cure a specific problem. For example, an award designed to deter potential future violators—to "set an example"—is barred. Thus, exemplary damages were properly denied in *Brooks Shoe*, where they could not possibly

---

4. A "Competent Congress" argument is available to each side. On the one hand, § 303 explicitly limits a plaintiff's recovery to damages "by him sustained." The argument is that, in writing § 303, Congress demonstrated that it knew how to limit damages when it wanted to, and that Congress's failure to do so in § 301 indicates that no such limitation was intended in § 301.

On the other hand, Congress has written explicit provisions providing for exemplary or punitive damages into numerous other statutes. E. g., the anti-trust laws, 15 U.S.C. § 15; the patent laws, 35 U.S.C. § 284. In writing these provisions, Congress has demonstrated that it knows how to provide for such damages when it wants to. The argument is that Congress' failure to so provide in § 301 indicates that such damages are not to be awarded under § 301. See United Mine Workers of America v. Patton, 211 F.2d 742 (4th Cir. 1954).

At best, this kind of point is unpersuasive makeweight. Where, as here, there are strong reasons for reading the statute one way, rather than another, I do not find it necessary to divine the intent of Congress by choosing between two credible, but conflicting, versions of the same bad argument.

remedy the situation at hand, and thus must have been imposed for forbidden purposes. However, where the award is a uniquely effective device for changing a specific pattern of illegal conduct by a party before the court, it comes within the remedial purpose of the labor laws, even though the defendant may suffer as if he had been "punished" for other reasons. In a proper case, an award of exemplary damages can be made under § 301.[5]

Remedies under § 301 must be tailored to the problems which they are invoked to resolve. Thus, even though an award of exemplary damages is an available remedy under § 301, it is not appropriate in most cases. Such an award is extraordinary and should be reserved for those labor-management situations which cannot be pacified by other remedies. Whether the present state of affairs at the Wanzer dairies is such as to require the invocation of the remedy of exemplary damages will have to be determined after the facts are established at trial. I hold now only that such an award is permissible under § 301.

Because the exemplary damages question cannot properly be raised on a motion to dismiss, I have treated the motion to dismiss on that ground as a motion to strike portions of the complaint. The motion is denied.

I have entered an order today denying the motions to dismiss of all defendants.

**5.** Although exemplary (punitive) damages are usually tied to conduct that is characterized as "wilful" or "outrageous," courts have long recognized that they may also be awarded for purposes of deterrence. E. g., Brown v. Coates, 102 U.S. App.D.C. 300, 253 F.2d 36, 67 A.L.R.2d 943 (1958); Reynolds v. Pegler, 223 F.2d 429 (2d Cir.), cert. den. 350 U.S. 846, 76 S.Ct. 80, 100 L.Ed. 754 (1955) (approving punitive damages "by way of punishment and in order to deter [defendants] from repeating the offense," 223 F.2d at 434); Bucher v. Krause, 200 F.2d 576, 587 (7th Cir. 1952), cert. den. 345 U.S. 997, 73 S.Ct. 1141, 97 L.Ed. 1404, rehearing den. 346 U.S. 842, 74 S.Ct. 17, 98 L. Ed. 363 (1953); Ward v. Taggart, 51 Cal. 2d 736, 336 P.2d 534 (1959).

The § 301 suit is distinguishable from the ordinary suit for breach of contract. Strong considerations of public policy, emphasized in *Lincoln Mills*, suggest that the usual rule barring exemplary damages in a breach of contract suit need not apply. See cases cited by Judge Staley in *Brooks Shoe*, 298 F.2d at 283, n. 3.